Opinion issued December 20, 2007













In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00620-CR






MURRAL GLEN TADYCH, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 183rd District Court

Harris County, Texas

Trial Court Cause No. 0982418




 


MEMORANDUM OPINION

 Appellant Murral Glen Tadych was convicted by a jury of aggravated sexual
assault for an offense committed on June 1, 1990. See Act of July 18, 1987, 70th
Leg., 2d C.S., ch. 16, § 1, sec. 22.021(a)(1)(B)(iii), (a)(2)(B), (b), 1987 Tex. Gen.
Laws 80, 80 (1987 Penal Code section 22.021(a)(1)(B)(iii), (a)(2)(B), (b)). The jury
assessed punishment at imprisonment for five years. Appellant brings two issues,
challenging the factual sufficiency of the evidence and claiming ineffective assistance
of counsel. We affirm.

Background

 Appellant was the stepfather of the complainant, L.T. At the time of the
offense in 1990, appellant was married to L.T.'s mother, Kimberly Aaron. Appellant,
Aaron, L.T., and appellant's and Aaron's two younger sons all lived together. 
Appellant's two older children, R. and A., were visiting for the summer. In 1990,
L.T. was four and her stepbrother R. was 14.

 L.T. testified at trial that on the night of the offense, she, her stepbrother R.,
and appellant stayed up while her mother and the other children went to bed. After
R. fell asleep on the couch, appellant asked her to come sit in his lap on a rocking
chair. She testified that appellant eventually massaged her thighs and rubbed the
outside of her underwear, before putting his hand inside her underwear, touching the
outside of her female sexual organ, and penetrating it with his finger. She did not
remember crying out in pain, and there was no bleeding. When appellant finally
stopped, L.T. testified that he told her to be quiet and not to tell anyone. L.T testified
that R. was asleep on the couch while this occurred. L.T. told her mother what
happened a day or two later. 

 L.T. testified that she remembered instances up until the time she was eight,
when she would wake up in the middle of the night to find appellant sitting on her
bed, or walking out of her room. There were also instances when she would wake up
in the morning and some of her clothes were off, and she did not remember removing
them.

 L.T. testified about another incident when she was eight, in which she was with
appellant and R., who was then 18. Appellant and R. were drinking beer, and
appellant got L.T. to drink what she believed was Sprite and white wine. L.T. fell
asleep and awoke to find appellant kissing her, including kissing her on her female
sexual organ. L.T. testified that appellant told her he loved her, to be quiet, and not
to tell anyone. L.T. told a friend about this incident when she was 16, and L.T. told
her mother in December 2003. L.T. and her mother thereafter began seeing a
therapist, who encouraged L.T. to report the abuse to the police. L.T. stated at trial
that she never liked appellant.

 Appellant testified at trial that on the night of the 1990 incident, L.T. climbed
into his lap in order to show off in front of her stepbrother R., on whom she had a
"crush." Appellant testified that L.T. raised her "fanny" in the air, and he eventually
"swatted" her on the "fanny" and told her she needed to "cover up." Appellant denied
touching L.T.'s female sexual organ. Concerning the 1994 incident, appellant denied
giving L.T. anything to drink that she did not want and described a knee brace he was
wearing at the time, which went from the bottom of his buttocks down to his ankle. 
Appellant testified that the brace made it difficult to move around.

 Aaron, appellant's mother, testified at trial that after L.T. told her about the
1990 incident, she confronted appellant, who initially denied that anything
inappropriate occurred. Aaron then testified to the following:

 [H]e started crying and he told me that he had been drinking, that
he did have [L.T.] sitting in his lap, that if anything happened he didn't
mean it to happen. He was so sorry. You know, it would never happen
again. He would never intentionally hurt [L.T.].

Aaron testified that appellant did not specifically tell her that he "touched" L.T.

 Appellant and Aaron divorced in 1997, and Aaron began denying appellant
visitation with their two sons in 2003. Appellant was charged for both the 1990 and
1994 incidents. The jury acquitted him of the 1994 incident and convicted him of the
1990 incident.

Discussion

 In issue one, appellant challenges the factual sufficiency of the evidence
concerning his contact with L.T.'s female sexual organ. A person commits the
offense of aggravated sexual assault if the person intentionally or knowingly causes
the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ
of another person, including the actor, and the victim is younger that 14 years of age. 
1987 Penal Code section 22.021(a)(1)(B)(iii), (a)(2)(B). The indictment alleged that
appellant "did . . . unlawfully, intentionally and knowingly cause the penetration of
the FEMALE SEXUAL ORGAN of [L.T.] hereinafter called the Complainant, a
person younger than fourteen years of age and not the spouse of the Defendant, by
placing HIS FINGER in the FEMALE SEXUAL ORGAN of the Complainant."

 When conducting a factual-sufficiency review, we view all of the evidence in
a neutral light. Cain v. State, 958 S.W.2d 404, 408 (Tex. Crim. App. 1997). We will
set the verdict aside only if (1) the evidence is so weak that the verdict is clearly
wrong and manifestly unjust or (2) the verdict is against the great weight and
preponderance of the evidence. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App.
2000). Under the first prong of Johnson, we cannot conclude that a conviction is
"clearly wrong" or "manifestly unjust" simply because, on the quantum of evidence
admitted, we would have voted to acquit had we been on the jury. Watson v. State,
204 S.W.3d 404, 417 (Tex. Crim. App. 2006). Under the second prong of Johnson,
we cannot declare that a conflict in the evidence justifies a new trial simply because
we disagree with the jury's resolution of that conflict. Id. Before finding that
evidence is factually insufficient to support a verdict under the second prong of
Johnson, we must be able to say, with some objective basis in the record, that the
great weight and preponderance of the evidence contradicts the jury's verdict. Id. In
conducting a factual-sufficiency review, we must also discuss the evidence that,
according to the appellant, most undermines the jury's verdict. See Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003).

 We may not re-weigh the evidence and substitute our judgment for that of the
fact-finder. King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). The
fact-finder alone determines what weight to place on contradictory testimonial
evidence because that determination depends on the fact-finder's evaluation of
credibility and demeanor. Cain, 958 S.W.2d at 408-09. As the determiner of the
credibility of the witnesses, the fact-finder may choose to believe all, some, or none
of the testimony presented. Id. at 407 n.5. The standard for reviewing the factual
sufficiency of the evidence is whether, after considering all of the evidence in a
neutral light, the jury was rationally justified in finding guilt beyond reasonable
doubt. Watson v. State, 204 S.W.3d 404, 415 (Tex. Crim. App. 2006).

 Appellant argues the evidence that the 1990 offense occurred is not reasonable
because appellant's son R. could not have slept through the entire incident. There
was no physical evidence of penetration, and appellant denied any misconduct. 
Appellant summarizes his argument by stating, "It is obvious that [L.T.] lied on
Appellant because she never like [sic] him and she wanted to help her mother win the
custody battle for her two sons."

 We hold that in its role as fact-finder, the jury was rationally justified in finding
guilt beyond reasonable doubt based on the evidence adduced at trial. We overrule
issue one.

 In issue two, appellant claims his trial counsel was ineffective because she did
not impeach Aaron's credibility with a document dated July 22, 1994, entitled
"DECREE GRANTING CHANGE OF NAME, " which purported to change L.T.'s
surname to Tadych, appellant's surname. The document was not signed by a judge,
and Aaron admitted to signing the names of the attorney ad litem and L.T.'s birth
father.

 The document, defendant's exhibit 4, was initially discussed at trial when
appellant's counsel asked how L.T.'s surname was changed to Tadych. The State
objected on the grounds of relevance, the trial court sustained the objection, and
appellant's counsel later made a bill of proof. At that time, appellant's counsel stated
she wanted to establish that Aaron created a document in July 1994, the same time
as the alleged second incident, that purported to change L.T.'s surname to appellant's
surname. Aaron testified that the creation of the document was appellant's idea.

 The trial court expressed concern that both Aaron and appellant had potential
criminal liability in creating the document. Appellant's counsel told the trial court
that she did not want to tell the jury that the document was fraudulent, but instead
wanted to introduce the document solely to establish the date when Aaron wanted to
change L.T.'s surname as being the same as the alleged second incident.

 Appellant argues that his trial counsel was ineffective because she should have
impeached Aaron with the "forged" name-change decree to show that Aaron was
capable of manipulating testimony to achieve her goal of terminating appellant's
visitation rights to his and Aaron's youngest children. Appellant also argues that
because L.T. testified that she disliked appellant, if trial counsel had impeached
Aaron with the "forged" decree, then the jury might have believed that L.T. was
testifying solely to help her mother. There was no motion for new trial or other
evidence of the strategy of appellant's trial counsel.

 To be entitled to a new trial based on ineffective assistance, an appellant must
show that counsel's performance was so deficient that he was not functioning as
acceptable counsel under the Sixth Amendment, and there is a reasonable probability
that, but for counsel's error, the result of the proceedings would have been different. 
See Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984);
Hernandez v. State, 726 S.W.2d 53, 55-57 (Tex. Crim. App. 1986). The defendant
bears the burden to prove ineffective assistance of counsel. See Strickland, 466 U.S.
at 687, 104 S. Ct. at 2064. Allegations of ineffective assistance of counsel must be
firmly founded in the record. McFarland v. State, 928 S.W.2d 482, 500 (Tex. Crim.
App. 1996).

 Because there is no evidence of trial counsel's strategy in not seeking to
impeach Aaron, appellant cannot prevail unless there is no conceivable strategy as a
matter of law. We may not speculate on why counsel acted as she did, and we do not
conclude as a matter of law that no strategy could exist. See Bone v. State, 77 S.W.3d
828, 835 (Tex. Crim. App. 2002) (if reviewing court can speculate about mitigating
evidence, then it just as logically might speculate about evidence of further
aggravating evidence).

 We overrule issue two.

Conclusion We affirm the judgment of conviction.

 


 Sam Nuchia

 Justice


 Panel consists of Justices Nuchia, Jennings, and Keyes.

Do not publish. Tex. R. App. P. 47.2(b).